CITY OF KENOSHA, Plaintiff-Appellant,†

v.

LABOR & INDUSTRY REVIEW COMMISSION and Thomas R. Knight, Defendants-Respondents.

Court of Appeals

*No. 99–1456. Submitted on briefs February 24, 2000.—Decided May 3, 2000.*

## 2000 WI App 131

(Also reported in 614 N.W.2d 508.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James W. Conway*, city attorney for Kenosha.

On behalf of the defendant-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *William W. Cassel* of Madison, and on behalf of the defendant-respondent, Thomas R. Knight, the cause was submitted on the brief of *Richard Thal* of Wisconsin Professional Police Association.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1.   NETTESHEIM, J.   This is an unemployment compensation case involving a suspended police officer. WISCONSIN STAT. § 108.04(6) (1997–98)[1] states that an employee who is suspended for good cause is ineligible to receive unemployment compensation benefits "until 3 weeks have elapsed since the end of the week in which the suspension occurs." The issue is whether the suspended officer's ineligibility period under the statute is measured from the date of the

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

suspension with pay or from the later suspension without pay. The Labor and Industry Review Commission (LIRC) ruled that the officer's ineligibility is measured from the date of the officer's initial suspension with pay. The circuit court upheld this determination. The employer, the City of Kenosha, appeals. Because the statute in question makes no distinction between a suspension with pay and a suspension without pay, we agree with the LIRC determination. We therefore affirm the circuit court order.

## FACTS

¶ 2. The facts are undisputed. On February 2, 1998, the City filed charges of improper conduct against police officer Thomas R. Knight and suspended him pending resolution of the charges at a hearing before the Kenosha Police and Fire Commission (PFC). In accordance with WIS. STAT. § 62.13(5)(h), which mandates that suspended police officers shall be suspended with pay pending disposition of charges, Knight's suspension was with pay.

¶ 3. Following a hearing, the PFC issued a decision on April 13, 1998, finding Knight guilty of the charges. As a penalty, the PFC suspended Knight without pay from April 14, 1998, through June 2, 1998. Knight applied for unemployment benefits that same week. Pursuant to WIS. STAT. § 108.04(6), the Department of Workforce Development (Department) determined that Knight was eligible for benefits commencing three weeks following his initial suspension with pay.

¶ 4. The City appealed the Department's determination of Knight's eligibility. Following a hearing, an administrative law judge (ALJ) upheld the Department's determination. The ALJ found Knight

"ineligible for benefits in weeks 6 through 9 of 1998" and "[t]hereafter . . . eligible for benefits, if otherwise qualified." The ALJ said that this result was mandated by the "clear statutory language requiring commencement of the benefit suspension period during the week the suspension 'occurs.' "

¶ 5. The City next appealed to LIRC. The City argued that a suspension with pay was not a disciplinary suspension within the meaning of WIS. STAT. § 108.04(6) but, rather, more akin to an "administrative leave." The City also argued that Knight was not unemployed during the period of his suspension with pay within the meaning of WIS. STAT. § 108.02(15)(a) and therefore was not eligible for benefits within the meaning of § 108.02(11).

¶ 6. LIRC affirmed the ALJ's decision. Echoing the ALJ, LIRC stated that WIS. STAT. § 108.04(6) "makes no distinction between a suspension with pay and a suspension without pay as to when the week of suspension begins" and that it "begins when the suspension is imposed regardless of how the employer characterizes the suspension."

¶ 7. The City appealed the LIRC decision to the circuit court. After reviewing the record and briefs submitted by the parties, the court agreed with LIRC's reading of WIS. STAT. § 108.04(6) and affirmed its decision. The City further appeals to this court.

## STANDARD OF REVIEW

¶ 8. On appeal, we review the decision issued by LIRC rather than that of the circuit court. *See Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79 (Ct. App. 1981). We do not weigh the evidence or pass upon the credibility of the witnesses, and we will uphold LIRC's findings of fact on appeal if they

are supported by credible and substantial evidence in the record. *See Langhus v. LIRC*, 206 Wis. 2d 494, 501, 557 N.W.2d 450 (Ct. App. 1996); WIS. STAT. § 102.23(6). Here, the facts are not disputed.

¶ 9.   Once the facts are established, their application to the statute or legal standard is a question of law. *See Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773 (1989). Depending on the level of expertise an agency has acquired in the area in question, we may defer to its legal determination. *See Barron Elec. Coop. v. PSC*, 212 Wis. 2d 752, 760–64, 569 N.W.2d 726 (Ct. App. 1997). Our supreme court has identified three levels of deference to agency decisions: great weight deference, due weight deference and de novo review. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996). Which level is appropriate "depends on the comparative institutional capabilities and qualifications of the court and the administrative agency." *Id.* (citation omitted). A de novo standard of review is only applicable when the issue before the agency is clearly one of first impression. *See id.* at 285.

¶ 10.   In this case, LIRC concedes that a de novo standard of review is appropriate because the agency has not previously ruled on the specific issue before us. We accept that concession and will analyze the issue on a de novo basis.

## DISCUSSION

¶ 11.   The City argues that LIRC erred in its interpretation of the relevant provisions of the unemployment compensation statutes by premising its ruling on the fact that WIS. STAT. § 108.04(6) makes no distinction between a suspension with pay and a suspension without pay. The City also argues that LIRC

erred because the unemployment compensation statutes were "created to provide benefits to employees who were 'unemployed,' and 'unemployed' means receiving no wages."

¶ 12. The ultimate question turns on the interpretation of WIS. STAT. § 108.04(6). Our goal in interpreting statutes is to ascertain the intent of the legislature. *See MCI Telecomms. Corp. v. State*, 203 Wis. 2d 392, 400, 553 N.W.2d 284 (Ct. App. 1996), *aff'd*, 209 Wis. 2d 310, 562 N.W.2d 594 (1997). We first look to the language of the statute. *See id*. If the plain meaning of the statutory language is clear, we do not look to rules of statutory construction or other extrinsic aids. *See id*. Instead, we simply apply the language of the statute to the facts before us. *See id*. Only if the statute is ambiguous do we examine the scope, history, context, subject matter and purpose of the statute. *See id*. However, we may also consider the interpretation of the agency charged with a statute's administration. *See id*.

¶ 13. The relevant language of WIS. STAT. § 108.04(6) reads as follows:

> DISCIPLINARY SUSPENSION. An employe whose work is suspended by an employing unit for good cause connected with the employe's work is ineligible to receive benefits until 3 weeks have elapsed since the end of the week in which the suspension occurs or until the suspension is terminated, whichever occurs first.

¶ 14. In calculating the employee's eligibility for benefits, this section does not distinguish between types of suspensions, particularly those with or without pay. As LIRC pointed out, the statute simply says

that three weeks must elapse from "the end of the week *in which the suspension occurs." Id.* (emphasis added). The language is plain and unambiguous, and it is well established that " '[w]e do not look beyond the plain and unambiguous language' of a statute." *L.L.N. v. Clauder*, 203 Wis. 2d 570, 593, 552 N.W.2d 879 (Ct. App. 1996) (citation omitted), *rev'd on other grounds*, 209 Wis. 2d 674, 563 N.W.2d 434 (1997). The City's argument that the term "suspension" in WIS. STAT. § 108.04(6) applies only to suspensions without pay requires us to read language into the statute that simply is not there. That is neither our function nor our privilege. Utilizing the plain and unambiguous language of the statute, we uphold LIRC's determination that the three-week period of benefits ineligibility properly began when Knight was first suspended, regardless of the fact that his suspension was with pay.

¶ 15. The City contends, however, that public policy considerations support its argument, thus requiring us to adopt its view. The City observes that the unemployment compensation statutes were "created to provide benefits to employees who [are] 'unemployed,' and 'unemployed' means receiving no wages." The City then cites to the general definitions of "eligibility" and "employment" as set out in WIS. STAT. § 108.02(11) and (15)(a), respectively. The former says that "[a]n employe shall be deemed 'eligible' for benefits for any given week of the employe's unemployment . . . ." Section 108.02(11). The latter defines "employment" as "any service . . . performed by an individual for pay." Section 108.02(15)(a).

¶ 16. We, of course, take no issue with the City's statement that the purpose of the unemployment compensation law is to provide benefits to those who have lost employment wages. However, Knight has lost

employment wages because of his suspension without pay. He therefore is eligible for benefits, subject to the method of eligibility computation prescribed by the legislature. That method is specifically addressed by WIS. STAT. § 108.04(1), not by the general definitions for "employment" and "eligibility" set out in WIS. STAT. § 108.02(15)(a) and (11), respectively. It is well settled that specific sections govern over general ones.[2] *See State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 595–96, 547 N.W.2d 587 (1996).

¶ 17. We agree with the City that some may find it anomalous that the period of ineligibility for unemployment compensation benefits does not take in the full period of a suspension with pay. But that is the legislatively prescribed effect of WIS. STAT. § 62.13(5)(h), which mandates suspension with pay for a suspended police officer until a hearing, and WIS. STAT. § 108.04(6), which measures unemployment compensation eligibility from three weeks following such a suspension. While perhaps unusual, we are not prepared to say that such an interpretation is unreasonable, absurd or contrary to public policy. The legislature is presumed to know the law when it writes statutes. *See State v. Trongeau*, 135 Wis. 2d 188, 192, 400 N.W.2d 12 (Ct. App. 1986). If the legislature sees this as a problem, it is free to correct it. But we will not rewrite the statute. *See Michael T. v. Briggs*, 204 Wis. 2d 401, 410, 555 N.W.2d 651 (Ct. App. 1996).

---

[2] The City also cites to the statutory subsections that define "partial unemployment" and "total unemployment," *see* WIS. STAT. § 108.02(20) and (25), and the provisions that set out the actual benefits payable when such conditions of unemployment exist. *See* WIS. STAT. § 108.05(1)(j), (3). However, these sections shed no light upon the issue before us. They simply describe degrees of unemployment and the attendant benefits.

## CONCLUSION

¶ 18.   We reject the City's argument that Knight's period of ineligibility commenced when his suspension was changed from one with pay to one without pay. Instead, we agree with LIRC's determination that Knight's period of ineligibility for unemployment compensation benefits commenced when he was first suspended with pay and ended three weeks thereafter pursuant to the clear language of WIS. STAT. § 108.04(6), which makes no distinction between suspensions with or without pay. Therefore, we affirm the circuit court order upholding the LIRC determination.

*By the Court.*—Order affirmed.